Start us off, I think. Yes, good morning. And I'd like to reserve three minutes for rebuttal. May it please the court and counsel, my name is Patrick Riley, and I represent a group of debt collectors and debt purchasers who have sent me here today on their behalf for one reason and one reason only. They want to do their jobs. And their job is to collect medical debt on behalf of doctors, nurses, hospitals, ambulance companies, labs, entities that should be paid for the hard work that they do. What's standing in their way is SB 248, which is an unconstitutional restraint on speech that undermines and conflicts with federal law. I want to start with the basic proposition that debt collection is speech. I can't think of a single thing that a debt collector does when it's trying to collect debt that doesn't involve speech, either with the debtor in terms of a phone call or a letter or with a consumer reporting agency furnishing information about a debt. Conceding that it is some form of speech, can it be regulated both in terms of what the debt collector can say and when the debt collector can say it? Within limits, and the Fair Debt Collection Practices Act does that, for example. It compels the mini Miranda warning and the validation. So why is the Nevada statute any different in the sense of compelling what you say and when you say it? Well, what's different, number one, is the FDCPA never says, don't collect a debt. The FDCPA... No, I'm asking you about the First Amendment argument. Yeah, exactly. And so that's how it's different from the FDCPA. But what the... Well, it only says, the Nevada statute doesn't say, don't collect the debt. It says 60-day grace period. Right, exactly. So that is, if you equate speech with collecting the debt, you have a 60-day period, at least, where the debt collector can't engage in speech with the debtor. It must send that Section 7 notice, but then it can't do anything else. It can't make a follow-up phone call. It can't send a follow-up letter. It can't communicate with the consumer reporting agency. Does that mean, then, for example, the state cannot say to, and I'll take it out of the debt collection context, but to, say, a mortgage lender, the state can't say, listen, you've got to give a 30-day grace period, a 90-day grace period before you can send that letter that says, listen, I'm going to foreclose? Well, there are time periods where you have to give certain notices, exactly. But the much simpler way to have addressed this would have been simply to tell medical service providers, well, you can't attempt to collect this debt, or you can't forward this debt to a debt collector until X number of days have passed after the date of service, instead of putting this all on debt collectors and saying, you have to send this notice, and then you can't do anything. You can't follow up. You can't speak with the debtor during this 60-day period. And I'll give you a great contrast with the other. So just to make sure I understand the distinction, you're saying that a waiting period would be okay, but a waiting period where you muzzle somebody, that's the distinction you're drawing? That is a distinction, and it's especially a distinction when you look at the... So in the mortgage context that Judge Fletcher was just asking about, waiting period would be okay, but if you had a similar type of waiting period and the bank couldn't reach out to talk to you, you would say that would not be okay? Well, if there were a similar restriction where the bank couldn't speak with the debtor or the customer, yeah, I think that would be a problem. How do you effectuate a waiting period if you don't kind of limit what they can... I'm trying to figure out, what is a waiting period without saying you can't tell them you have to pay us this debt right now? Well, and it's especially during that 60-day period, the things that you can't say to the debtor, because the debtor can contact the debt collector during that period. I'm just trying to figure out, what is a waiting period without saying you can't say certain, at least certain things, because a waiting period is basically saying you can't collect the debt, which you do through speaking to the person. Well, but a waiting period on speaking to a person has First Amendment implications to it. I hear your argument on that, but I'm just trying to figure out this distinction I thought you were drawing between. I have to say that the First Amendment argument is running past me. I would be more interested in hearing about the preemption, but it does seem to be a problem if you think that the state could simply back up the 60-day waiting period, impose it on the medical providers, then isn't it muzzling the medical provider's speech? Well, I was talking about possibly requiring the medical service provider to wait before they forward the debt. Well, but that would also be muzzling a kind of speech. That is, you'd be muzzling their speech to the debt collectors. And it would similarly be muzzling the debt collectors from being able to go forward. I mean, it just feels like it's muzzling no matter what. And if the argument is that's barred by the First Amendment, I think you've run up against an awful lot of precedent the other way. Well, no, the precedent I'd like to talk about is Greater New Orleans Broadcasting, because what that case involved was under-inclusiveness. So you have a restriction on speech here against debt collectors, but not on medical service providers. And like in Greater New Orleans Broadcasting, where you had a restriction on casino marketing, but not on tribal gaming, the Supreme Court's problem was that we're just shuffling this speech along from one side to another. So in this case, medical service providers can send those letters. They can pick up the phone and call the debtor. The debt collector cannot. And so the question becomes, why are you targeting debt collectors instead of the medical service providers as well as the debt collectors? It raises a red flag about whether you've satisfied that element of the commercial speech standard, where does the law actually further the stated interest that the government's provided? In this case, a cooling-off period. Is your speech argument your strongest argument? You don't have a lot of time. I'm trying to figure out, I want to make sure, what do you think is your strongest argument? You have four, I think? Four, yes, and I struggled with this, because I feel like FDCPA preemption, Fair Credit Reporting Act preemption, and the First Amendment are all right. Why don't you turn to the preemption arguments? Okay, in terms of the Fair Credit Reporting Act, there's a very broad preemption provision under 1681 T.B.1.F., which is the duties and responsibilities of furnishers of information. That is not a mere conflict preemption statute. That is a broad relates-to preemption statute. So any statute... We're talking, you're talking about 1681 T.A.? 1681 T.B.1.F., I believe. T.B.1.F., okay. Which relates to the duties and responsibilities of furnishers of information. So it's an exception to the general preemption rule under the Fair Credit Reporting Act. And what that rule says is if there is a state rule that just relates to the duties of furnishers of information, that law is preempted. Also within that subset, implied preemption, I want to talk about the Arellano case briefly. Yeah, let me first talk about the preemption statute for the Federal Credit, for the FCRA, that is to say 1681 T. A says no preemption of state law except. And then you're going to the exception. Correct. So we start out with a notion that basically state law governs except, and then you go to subsection F. Correct. And subsection F, this is an exception, and it is preempted, 1681 S-2, relating to the responsibilities of a person who furnishes information to a consumer reporting agency, except, and then except out a couple of state statutes. Well, when you go to 1681 S, it is the responsibilities of furnishers of information to consumer reporting agencies. A says, and it's headed, duty of furnishers of information to provide accurate information. The entire thrust of this section is accuracy of information. Correct. And the delay has very little to do with, and nothing I can really see having to do with accuracy. It just says you can't do anything for 60 days. Right, but what credit reporting does is it not only says how much money is owed, but it says how long the debt has been out there. So when you're not telling the consumer reporting agency, and in turn the lender, how long this debt has been sitting out there, you're not giving an accurate impression. I view the impact of the laws as providing a 60-day moratorium to prevent surprise and to give the period of debtors the opportunity to challenge the debt and go back to the hospital and say, whoa, where did all of this come from? And how was I supposed to know about this before I went in for this procedure? And if that, it actually goes to promoting accuracy. They make sure that they've actually got the right debt. It's just a moratorium, and we've seen lots of moratorium the last couple of years. It's not just a moratorium because the state section seven notice is different from the Regulation F notice that the Consumer Financial Protection Bureau has mandated that debt collectors provide in their initial communications to debtors. It provides less information, it provides different information, and it provides confusing information because on one hand, the state is telling debt collectors to say, this debt is not demanded or due. And at the same time, the CFPB Regulation F notice says this is an attempt to collect debt. Anything you say will be used for that purpose. And it gives a pay stub and it gives information where the debtor can actually pay the debt, whereas the section seven notice doesn't allow you to do that. And so it actually takes protections away from the debtor, believe it or not, but it does. And by the way, with regard to FDCPA preemption, the state recognizes all of these conflicts between federal and state law. What they've come up with is a construct to say that the FDCPA doesn't apply during this period. This is a pre-collect notice. This is not an attempt to collect a debt. So what's particularly frustrating- Right, right. Can I ask you one follow-up to the earlier, as far as the accuracy aspect of this, when you ask, if you wait a certain amount of time, you're forced to wait 60 days. Right. And what that means is you can't report it to the credit agency during that time. So how is that going to affect the accuracy? The credit agencies, you said something about they tell how old a debt is, correct? Well, after 60 days, will they be able to report it as being, as including that 60-day period? Or will they have to show it as being delinquent at the end of that 60 days? I confess I don't know the answer to that question, Your Honor, I apologize. I think the problem that we have here is that when you let states begin to dictate what categories of information can and cannot be reported to the consumer reporting agencies, you're going to see kind of a Swiss cheese list of exceptions. This state will say, well, you can't report on medical debt. This state will say, well, you can't report on auto debt. This state will say you can't report rental history. And so you take this federal construct of credit reporting and you've interfered with it. And so at a minimum, what we have is implied preemption. I mean, Congress stated the express purpose of the Fair Credit Reporting Act was accuracy in credit reporting. If you let states dictate what information can and cannot be submitted, you're going down a very slippery slope. But this is not regulating what information, it's regulating when. Well, but it's medical. It is specific to medical debt. Well, I understand, but it's regulating timing. It's not regulating the substance of the communication once the debt collection begins. Right, right. But I want to make it clear, once you go down that road, states will then say, well, why report any medical debt at all? It's not fair to do that. Well, but that's not the case that we've got before us. We've got a 60, right. We've got a 60-day pause after the sending of Section 7 notice on reporting medical debt. I know you didn't want to hear about the First Amendment issue, but I wanted to make one comment. Well, it wasn't that I didn't want to. I didn't want to hear about it. You had very little time, and I wanted you to get to the preemption questions. Do you want to keep, you've got about two minutes left. I'll reserve it. Do you want to reserve it? Yeah, thank you. My colleagues have further questions for now. Okay, well, we'll reserve that time, and we'll hear from the Commissioner's Council. Good morning. May it please the Court. Keel Ireland on behalf of Defendant Appali, Sandy Laughlin. Protecting consumers and regulating debt collection are traditional state powers. SB 248 is a work-a-day exercise of those powers that addresses the widespread burden of medical debt in Nevada. It represents a modest extension of existing state and federal. So, yeah, I'll go ahead and, because there's some specific questions here. One of them is this relationship about accuracy and timing. We know that FCPA, one of the two acronyms, I can't remember which one, but I think it's the FCPA, relates to accuracy. And their argument is that you're delaying things, and so you're reducing accuracy. Do you, does the state admit that, I mean, does the state admit that relationship, or does it just think it's not relevant? And specifically what I mean, so if the state of Nevada passed a law that said you had to wait a year, I could kind of see where that would be hard to argue that doesn't, all of a sudden now, all these credit agencies would not know about some debt for a whole year. Does the state agree, but just, I wanna know the state's position on that relationship. Does it agree that there can be a relationship, which there just isn't in this case, or think that there's no relationship? And if you agree there is a relationship, where do you draw the line? Well, Your Honor, in a preemption question like this, of course, it goes back to congressional intent. And I, my first answer would be that if Congress had intended to force furnishers to furnish information within a certain period of time, they would have forced furnishers to furnish within a certain period of time. There's no time limits for furnishers. No, no, Congress could have just said, don't do anything that interferes with accuracy, right? And then, because if they try to, Congress tries to parse out every single little thing that might interfere with accuracy, they'll probably miss something, right? And so, I don't know that it's necessarily true that if the hypothetical, you know, person that is Congress intended something that they would have necessarily included something. I mean, I think it's our job to figure out whether it messes with accuracy. That's why I'm asking that question. Yes, Your Honor, and I think the other answer would be that there's no evidence in this case that it is necessary for the accuracy of credit reports. The plaintiffs below did not- There's also no accuracy supporting the state's sort of seems like made up for litigation position that somehow waiting 60 days is gonna make things more accurate. My understanding, but I'm not an expert on this, so I appreciate help on this. My understanding is that there's pretty severe penalties. I think I had another case, which is basically where my understanding comes from. There's pretty severe penalties if a credit reporting entity reports the wrong amount or something wrong and is told about it and doesn't fix it. So that you already have, it seemed to me, I got the impression from that that there's pretty strong incentives for these entities under federal law to not report inaccurate information. So why does the 60 day? I know the state says 60 days is a good thing. It's really helpful, but why is that actually? I mean, I didn't see any evidence of that. Well, Your Honor, just to be clear, I don't think it's the state's burden to show that it's furthering the purposes of the FCRA or anything like that. But the state's position, and it's clear in the legislative record when this law was being debated in the legislature is that medical debt uniquely is a debt that the debtor might not know about, or it might not be the debtor's fault. It might be a billing error. It might be a problem with insurance. And so often, and the plaintiffs testified this, the usual response in your first communication with the debtor is, I thought my insurance took care of that, or I didn't even know I had that debt. And so with the 60 days, and I believe Judge Bivey was discussing this before, the 60 days gives the debtor the chance to go back to their insurer, go back to the medical provider, and it might turn out that there was a mistake or that the insurance covers it. If not, there might be the availability of a payment plan with the medical provider, which takes away the need for this to go into collection. And one of the things that they're after in the statute is not just, excuse me, not just giving the deadbeat 60 more days before being hit up with a collector. If it's been turned over to collection, when you call back to the hospital or whoever the underlying service provider is, if they've already turned it over to collection, their response tends to be, I've handed it over to collection, I'm not talking about the amount. So I can see why the 60-day period is a period during which you actually could talk productively to the provider, whereas after it's gone into collection, they won't give you the time of day. Yes, Your Honor, and in the legislative record, that's entirely what the experts were testifying to, that this can be an opportunity for debtors to talk to the medical provider maybe about a debt they didn't even know about. And that's why the notice is so important. It wouldn't be the same to just delay the amount of time before a collection starts, because what we really need is for the debtor to know about this and to know that it's going to collections so that then they can take action. So can I take you back to that? Because I really, I want to see the limits of what you, so let's do the year. I think maybe I didn't make the question clear. Let's say that this law was a year instead of 60 days. Same law, but a year. Would that be a problem with, if they had to give the notice, wait a whole year, would that be a problem with the FDPCA? I think FICRA is easier to say. Would that be a problem because it would undermine the accuracy? I don't, again, I have to return to my argument. I don't think it undermines what the Act is trying to do, which is to make sure when things are reported. Okay, so just so I'm clear, so your position is that there's just this difference between what I'll call delay, I'm not putting, but what I'll call delay and accuracy. Those are two different things, and they don't really relate. Is that your position? Yes, because I don't think that FICRA is envisioning that credit reports are necessarily comprehensive. Like I said, there's no obligation that every single debt has to be reported. The obligation is to protect the consumer. When a debt is reported, it must be accurate. And that's in line with- Whoa, whoa, whoa, whoa, wait, wait, wait, wait. So your position is even, I think you've taken an even more extreme position, which is the state of Nevada could just start banning things from being reported altogether, because then that wouldn't undermine the accuracy of credit reporting either. Well, of course, that would be a different case, and it could- No, I know. At some point, the sum of the bans or banning certain things could distort the credit report in a way that would harm consumers. So you're taking a position that accuracy is just simply that if a debt is, that it has to be the right number or something like that. But that, but, okay, that's pretty extreme, but okay. Yes, Your Honor. That's how I read the act, that if debt is reported, which is not an obligation, but if it is reported, it must be accurate, and the furnishers must correct- And when you're talking about congressional intent, you don't think, and I more would look at the text language, but that Congress, when they were doing all this, wouldn't be troubled at all by the fact that you'd end up with, you could end up with a, if there was balkanization by states, you could end up with credit reporting that just wasn't very useful because it doesn't have a lot of debts on there because states said you couldn't, and it doesn't get them on there for a year, two years, three years, and, you know, way after. And keep in mind, you're trying to decide whether to give somebody a loan based on this credit score, that the credit, that's the whole purpose of this. And, you know, they could have, they could be, have all kinds of debts that they haven't paid, but they haven't been reported because they only did so six months ago. Congress wouldn't be troubled by that? My reading of the act is Congress was troubled that this credit reporting system had sprung up without any regulation and it was harming consumers. And that's what this court said in credit data of Arizona, that it's a consumer protection statute that allows the states to go farther. It wasn't intended to protect the credit reports, well, to the extent the credit reports protect consumers, it is, but it's not necessarily about the sanctity of the credit report. It sounds like your view of the law is that, like, Congress is only interested, it's not really like looking at both entities and trying to get a balance here, but that it's just trying to, you know, if states do something that benefits consumers, not in a sense of, like, overall, but just benefits them and not having anything reported, that that would be allowed. At least as it goes to furnisher responsibilities, I'm not familiar with the other obligations in there, but I think that's consistent with what this court said in credit data, and it's also consistent with the First Circuit's decision in Fray, which came out in June after the briefs were filed. But there, there is actually a 180-day moratorium imposed by Maine on several types of debt, including medical debt, and they're the First Circuit, so that's okay because, again, the Act doesn't regulate the timing, it regulates the accuracy, and if you furnish, then you must furnish accurately, but. So is there any, does SB 48, 248, does that prohibit in any way the hospitals, for example, ability to call repeatedly and say, we need this or we're going to turn it over to a debt collector? So those kinds of threats. Or you continue to send bills and say this money is owing, this law doesn't apply to that, does it? No, Your Honor, this law draws the same distinction as the FDCPA, which is it only applies once the debt has been signed off. Once it leaves the, okay. And a second question, so is it the state's view that the 60-day moratorium effectively is a declaration that the debt is unsettled, that is, that the amount owing is unsettled and not verified? I'm trying to be careful with my answer because the FDCPA has its own obligations as far as verification. My understanding is that the only thing the notice says is that this debt has been assigned to a debt collector. Where the debt originated is to the medical provider because the debtor might not know that part of it. And that now there's a certain period of time before collection efforts will start. I'm not, I don't know if I would characterize it as a statement that the debt is unsettled or anything like that. It's just to give notice that this debt is out there and the clock is ticking. What did the legislature, what was the evidence before the legislature about the surprise for debtors once they got contacted by a debt collector on the medical debt? The primary testimony was an attorney at our main legal aid center in Southern Nevada that had worked with numerous clients and had dealt with these issues over and over again. But I think it's also confirmed. And what did he or she say? She said that almost always these people did not know about the debt and that they immediately, these cases often immediately proceeded to litigation. Did she break it down as to what kinds of charges were a surprise to clients? Was it that they thought they had pre-clearance with their insurance company through the surgeon, but all of a sudden they had an anesthesiologist they didn't know about? Or there was hidden charges on, I don't know, removing sutures, providing hospital meals, what? I don't think there was any kind of statistical analysis, but she brought up that exact situation that she had clients where you believe it's covered by insurance, but the anesthesiologist isn't covered. And so you get the surprise bill. And her testimony was that these often end up in litigation very quickly. And that's when the charges and the attorney's fees rack up very quickly. And so that's another important part of this. They ended up in litigation, how? Who brings the suit? The debt collector. The debt collector brings the suit. Yes, and we'll get either a default judgment or a confession of judgment. And that's where we see these, it could be very small charges at first, but you can see them triple or quadruple very quickly once it gets to the court stage. And so that's why, again, uniquely in the medical debt context, it's important to give this 60-day period so that we can kind of slow that part down and see if maybe the debtor can fix it through other means. Gotcha. Can I, I have a little different direction question. I think it relates to the FDCPA, the one with five letters. And so I think your colleague on the other side kind of hit on this towards the very end, which is, in my understanding, when I read all the state's briefing and everything in this case, the state does not seem to be arguing that, no, you can provide the Minnie Miranda warning, you can provide the validation rights notice that's required by federal law, and you can provide the notice that's required by SB 248 altogether. The state does not seem to be making that, but I didn't necessarily see where the state affirmatively asserted they couldn't. Instead, they have this argument that you haven't really gotten into the world where the federal law applies when you do the first part. I just want to make sure, is the state conceding, or should I take from the state's position that you can't do both, you can't provide one notice that provides everything? Because it does sound like there would be some wording that would be, and in fact, even in some of those samples, and I don't want to read too much into those, but some of those samples, it seemed like it said one thing at the top, and if you were like, you'd be like, what is, but I know the state didn't prepare those, right? Those are prepared by debtors trying to, I'm not, I'm sorry, bill collectors trying to figure out how to comply with everything. Yes, I think the problem is if the SB 248 notice was considered a communication under the FDCPA, which we don't agree with, I think the problem would be the validation notice, because the validation, the FDCPA, the federal validation notice says, you must dispute this debt within 30 days, otherwise it'll be assumed to be valid, and that just is very contrary to the purpose. It's like kind of, so, so it seems like there's some conflict there. So the odd thing is, here's a hypothetical I came up with to try to figure out whether your world that you've kind of created where there are two separate things, if in, say, Arizona, where they don't have SB 248, in Arizona, some debt collector, for some reason, I don't know why they ever would do this, but just started doing everything that's required by SB 248, decided it's good business practice, I want to be the helpful debt collector, and so give everybody a 60-day notice, did all these things, so sends out a notice. I think a court would be, would have a hard time thinking that that initial notice that they would be providing,  would just be their voluntary. If they were trying to argue, oh, that was not an initial communication to use the, initial communication for purposes of, initial communication in connection with. The biggest issue for me is the in connection with language. That's pretty, pretty broad language. Yeah, how do we, and I'll give you the opportunity to, but how did, you know, how is that not an initial communication in connection with a debt collection? Because why else are they sending it? They're sending it in connection with their plan to collect the debt 60 days later. Yes, so there's kind of two parts to my answer, and I'll make it quick because I know I'm over the time. So first, the in connection with the debt language has been interpreted by basically every circuit to mean that you have to have the animating purpose of the communication has to be to induce settlement of the debt. And so there would be an argument, even in Arizona, that it wasn't necessarily to induce settlement, because a lot of the things in that letter are not going to make someone want to go pay the debt right away, right? But the other thing I'd say is that, at least in Nevada, obviously the animating purpose is to comply with the law. It's not to collect the debt. But that's not true, because if I, the animating purpose, I mean, I gotta imagine, if we were in a different circumstance, and you were having, you would be here arguing that you would be pounding the table saying, there is no reason that a debt collector reaches out to somebody except in connection with the collection of debt. Sure, the first thing they may send is, you know, I hope your mother's doing well, comma, pay your debt. Right? And you say, you know, all of that, it's all in connection with the collection of the debt. It's really a, seems like a parsing that is difficult to, I mean, the whole reason they're sending, the whole reason a debt collector is sending this notice is so that 60 days from then they can start their process. Your Honor, I think the other circuits, including the Sixth Circuit Gruden case is the main one I'm thinking of, has rejected that idea that every communication is, of course, we know in some practical sense that's true, but you have to actually look at the content of the communication. So in Gruden, the debtor was answering questions from, or sorry, the debt collector was answering questions from the debtor when the debtor had called the debt collector and there the debt collector wasn't making any attempt to collect the debt, it was just making a good faith effort to answer the question. Let me ask you a question, maybe gets it. So let's say, nor the earlier hypothetical, I just, as a debt collector, as a policy, always send a very short letter saying, you know, instead of saying pay your debt or whatever, I don't know what they say, but I'm sure it's mean. Like you said to me, I always think it's always good to just say, hi, I'm your neighborhood friendly debt collector, I've been assigned this thing and please feel free to give me a call if you've got any questions. That's all it says, right? It doesn't, so again, it'd be hard to think that, well, there's only one reason they're saying that, but would you say that that one, that that letter that I'm talking about is initial communication in connection with the collection of a debt? Well, that could get into whether it violates SB 248 and I don't want to get too much into it. No, no, no, I'm not saying SB 248 doesn't exist in my world, I'm just saying, is it a problem from the federal perspective? Because if they did not provide these notices, the mini RANDA and the validation rights notice, if they didn't provide those, but they sent this little three sentence letter that just says, introducing myself, feel free to call if you've got any questions. I don't believe that would be communication in connection with a debt. It's different than the 11th Circuit case that my friend on the other side cites, where you kind of demand that the other person call you back, or it's kind of like, you gotta call me back. If it's just a letter saying, I'm out here, here's my number, that doesn't seem to me like an attempt to collect the debt, even though, again, we know as people that that is what's going on. Well, and even if there's a marginal sort of fuzzy area as to whether these letters in Arizona or some state that does not have SB 248, as to whether or not it's an attempt to collect the debt, the actual letter that we've got under Section 7 is clearly not such a letter. I mean, that's obvious, it's not an attempt to collect. It's saying, no, we're not gonna do anything. We're not gonna attempt to collect until 60 days from now. So there may be an ambiguous letter in a state that doesn't have this statute, but this letter under this statute is very clearly not an attempt to collect. It's a statement of saying, 60 days from now, we're coming after you. Yes, Your Honor, it's basically the antithesis, it's always- I thought you might say yes to that, but is that really true? Because I mean, if the whole purpose is to give people 60 days to sort of resolve it some other way, and presumably, many people will actually go and pay that debt with the hospital or do something like that. Even this 60 day thing is sort of, if they're gonna resolve it some other way, that will often involve them essentially paying their debt. I would agree that hopefully, the effect would be the debt being paid, it might be by insurance, might be with the medical provider. But the purpose is not for the debt collector to collect the debt, it's for the debtor to figure out what's going on and to hopefully get the debt taken care of in a way that is within their means. Well, we've kind of- Any other questions? All right, well, we'll go ahead and give the appellants their rebuttal time. Thank you, Your Honor. Judge, you're hypothetical. If a white hat debt collector in Arizona sends that letter, they violated Regulation F, because under Regulation F, the first communication is supposed to be that form model notice that the debt collector sends. And if you don't send that letter, the debt collector loses their safe harbor for compliance. I'd like to raise the point that the judge raised about his feeling that this Section 7 notice is not an attempt to collect a debt. Well, if that's the case, then we can't apply the commercial speech standard, because under the Eric's case, you can only apply commercial speech when you've got an advertisement, a solicitation, marketing, proposing a commercial transaction, or if the speaker's motivation is pecuniary. Under your theory, if Congress adopted a nationwide 60-day moratorium on medical debt, that would also violate the First Amendment. I believe it would, yes. Yes, because we're not talking about the FDCPA saying you can't call a debtor in the middle of the night. We're talking about 60 days. That's quite ironic in light of the Miranda warning, because the Miranda warning becomes compelled speech. Correct, but also what we're talking about here with SB 248 and that kind of rule, it's not just content-based, it's viewpoint discriminatory. You're telling one side of the conversation, you can talk, but you can't. You can pick up the phone and call the debt collector, but the debt collector can't pick up the phone and call the debtor. It's favoring the speech of one party versus another, and that's where we start talking about the Sorrell case. So the recent rent moratoria during COVID were okay just because they were moratoria and because they didn't prohibit the landlord calling up and harassing you over the stupid law that the legislature had passed. Right, SB 248 is about speech and it's about the contact, because again, medical service providers aren't subject to this law. They can send as many letters as they want. They can make as many phone calls as they want. This is targeting the debt collector who has been singled out simply for who they are. So we're about out, I mean, we are out of time, but I just want to make clear something. So I think your answer to Judge Fletcher's question was that there's a speech problem because of the way this works in conjunction with federal law. And then I think Judge Bibas said, wouldn't that still be a problem even if Congress did it? But if Congress did all of it, it wouldn't have, I think maybe that the specific speech problem you were pointing out wouldn't be implicated. You still would have a speech problem for the reason that you think that this thing treats different speakers differently, which is often where speech problems lie and all that. But I think the specific speech problem that you're pointing out in response to Judge Fletcher would not necessarily be implicated by, if this was all just congressional, if there's all one statute by Congress that had a break. But I was gonna ask you if that's right, but it's probably not clear enough that what I'm saying. Well, it would eliminate the preemption questions, that's for sure. No, but I think it would eliminate a speech pressure question. But I'll have to think about that. No, and I just wanna talk about one final point because I'm over my time. But I asked the court to review the overshadowing aspect of all of this with regard to the FDCPA, that when you send a notice to a debtor that says, this is not an attempt to collect a debt, but this is an attempt to collect a debt, and you saw the many sample letters, which were approved by the state commissioner. Those are actually approved by the state. And they say all sorts of things. This is a delinquency notice. This is not an attempt to collect a debt. This is an attempt to collect a debt. I mean, as a lawyer who's practiced in this field for 20 years, it's confusing to me. Your argument's gonna confuse things, and so that is another reason why it's printed under. Correct, yes. We've got that argument, I believe. Also, all right, well, with that, we've ended a long day and a long week of arguments. Thank you to all the counsel for your arguments, and the court is adjourned. Thank you all. All rise.
judges: FLETCHER, BYBEE, VANDYKE